# SUPERIOR COURT

———

Margaret J. Sumption  
    vs.   } Eq.No.7030  
Celestina Merewether

RESCRIPT.

July 14, 1925.

BAKER, J. Final hearing.

In this case the complainant is seeking to have the Court determine the true boundary line between her premises and those of the respondent.

For Complainant: William Williams, Green, Curran & Hart.

is asking that the latter be enjoined from completing a certain driveway, and asks that a portion of the respondent's garage, which is claimed to be an encroachment, be ordered torn down.

The facts show that the parties are adjoining land owners of property on Pawtucket avenue in the Town of East Providence. They each purchased from a common grantor by reference to certain lot numbers on a recorded plat known as "The Crown Plat."

It is undisputed that, if the complainant's claim as to the boundary line between the two properties is correct, the respondent's garage and proposed driveway will be an encroachment on the complainant's property. It is also not denied that if this is the situation, the complainant's own garage will project some small distance into the line of what is known as Crown Avenue on said plat.

The determination of the case seems to rest on the construction of the description in certain deeds, certain surveys, and the general acts, conduct and intention of the various parties involved.

It seems clear from the testimony that at the time the parties bought their respective lots, the respondent purchasing shortly after the complainant did, there were on the land certain stakes, not in the nature of bounds or monuments, but surveyors' stakes, which to some extent purported to mark out the lots in question. Apparently these were stakes set in the ground by Mr. Frederick V. Waterman when he made a survey in 1920.

The difficulty in the situation appears to arise from the proper determination of the location of Crown Avenue on said plat. The testimony shows this to be an unimproved street without definite bounds or marks. The question as to the proper location of Crown Avenue, in turn, seems to depend on how the southerly line of the Crown Plat is to be fixed. The property comprised in this plat was purchased by Mr. Norton, the common ancestor of the parties in this preceeding, in 1897, soon after it was platted by Mr. Frank E. Waterman, solely by reference to the plat. This Crown Plat bounds southerly on property of the Ira Armington heirs.

The testimony shows that this line was and is marked by a stone wall. On the plat this line appears straight, but as a matter of fact the testimony shows clearly that it has a slight turn or bend some little distance in from Pawtucket Avenue. The weight of the evidence in the case shows beyond any question that this wall is in substantially the same condition and position now as it was some fifty years or more ago.

The complainant's testimony tends to show that Crown Avenue was laid out by Mr. Waterman in 1897 by merely measuring northerly 100 feet in from the main portion of the stone wall, assuming the said stone wall apparently to have been straight, and thereafter making all the lines on said plat run parallel and at right angles.

The engineer apparently lost sight of the fact that the stone wall which was the southerly boundary of the plat was not straight, and that in so laying out the plat there was apparently near the Pawtucket Avenue end at its southerly portion a small piece of land, perhaps from six to eight feet in length, which was not accounted for. This is what is at present causing the trouble. This is the survey for which the complainant is contending and which, if it is correct and properly delineates the lines, would entitle the complainant to the relief sought.

The respondent, on the other hand, claims that if the construction and survey for which she contends is proper, then both parties will have all the property which each respectively purchased, but that the lot and street lines will merely be moved a few feet southerly and that the structures complained of will be on their proper lots, and that there will be no encroachment.

The respondent placed on the stand Mr. Sarle, who testified that after an examination of the deeds and a survey made by him of the premises, the proper starting point at which to begin measurements was the southeasterly corner of the plat at the point where the Armington wall meets the highway line, and that if the lines were run from this point, the only change in the situation would be that, owing to the bend in the wall, one or two of the lots in the neighborhood of Lot 26 would not be quite as deep as they are shown on the plat but that otherwise the lines would be as delineated and the parties would have the necessary amount of land, and there would be no encroachment.

An examination of the deeds introduced in evidence satisfies the Court that the only fixed monument in the immediate neighborhood is the end of the Armington wall, where it meets Pawtucket Avenue. That, apparently, was the starting point for the descriptions in several of the deeds and is a bound which has not changed in many years. The plats and deeds show that it was the clear intention of the parties, when this strip of land was first sold and divided, that it should run northerly along Pawtucket Avenue 250 feet, starting from the end of the stone wall in question. The present owner of the plat, Mr. Norton, is supporting the respondent in her contention as to the true boundary line.

Of course it is true, as the complainant argues, that the question is not so much where the lines of Crown Avenue should have been laid out as where such lines actually were platted. It seems to the Court, however, that the intention of the parties in such a matter is of considerable importance, and in the judgment of the Court none of the parties interested intended that a small portion of land should remain unplatted by reason of the curve in the Armington wall, and, further, it would seem to the Court that the only proper place from which a survey could well be started was the end of the Armington wall. That was the only real monument in the immediate neighborhood, and where there is such a monument it seems to be the law that it governs over directions and distances if any question arises.

Further, the conduct and attitude of the parties themselves in the mind of the Court throws some light on how the matter should be disposed of. If the complainant's contention is correct, then she herself is encroaching into the lines of Crown Avenue with her own garage. It hardly seems that she would have done this if she believed the correct boundary line to have been as she now claims. Moreover, in the opinion of the Court the balance of convenience should have some weight in a case of this kind. If the complainant's contention is sup-

ported, a portion of the respondent's garage will have to be torn down. On the other hand, if the respondent's contention is upheld, each party will have all the land purchased as far as area is concerned and neither one will have to disturb existing structures.

An examination of the deeds and plats does tend to show that possibly a determination of the northern line of the Crown Plat may at some time become necessary. It appears that there is a portion of a fence some 257 feet north of the end of the Armington wall, whereas, apparently, the actual frontage of the Crown Plat is 250 feet. This discrepancy, however, may have come about through adverse possession or through recognized boundary fences between prior owners, and in any event does not enter into the question involved in this case.

After considering all the law and the testimony, the Court has come to the conclusion that the proper boundary line is the one claimed by the respondent. That being so, the prayer for relief is denied and the bill is dismissed.

For Complainant: Raymond T. O'Neil.

For Respondent: Flynn & Mahoney.